J-S35024-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KHIRY LAMAR BOSTON | : | |
| | : | |
| Appellant | : | No. 636 MDA 2022 |

Appeal from the Judgment of Sentence Entered March 24, 2022
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0001189-2021

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McLAUGHLIN, J.:          **FILED JANUARY 30, 2023**

Khiry Lamar Boston appeals from the judgment of sentence entered following his guilty pleas to multiple drug-related offenses. Boston argues the court abused its discretion at sentencing. We affirm.

Boston entered an open guilty plea to three counts of delivery of a controlled substance (fentanyl), one count of possession with intent to deliver a controlled substance, and one count of conspiracy.[1] At the guilty plea and sentencing hearing, the Commonwealth gave a factual basis for the charges. It explained that an undercover police officer purchased fentanyl from Boston in Reading on three occasions between January and March 2021, and from his associate, Miguel Bonez-Gomez, on five occasions during that same period.

---

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 35 P.S. § 780-113(a)(30) and 18 Pa.C.S.A § 903(a), respectively.

The two men lived in the same apartment building and shared a phone, which they used to arrange the drug deliveries, and a pickup truck. The police searched Boston's apartment and discovered multiple items utilized for packaging and distributing heroin and fentanyl, a bag containing 9.51 grams of heroin and fentanyl, and $1,001 in cash. The police also searched Bonez-Gomez's apartment and discovered additional items for packaging and distributing fentanyl, approximately seven grams of fentanyl, and $2,852, some of which was from the controlled buys by the undercover police officer.

The Commonwealth argued that Boston had sold drugs "over a period of some time," had conspired with Bonez-Gomez, and had sold drugs purely for financial gain, as opposed to support a drug habit. N.T., 3/24/22, 15-16. The Commonwealth also pointed out that Boston had a previous criminal history including convictions for aggravated assault and drug delivery. *Id.* at 17. The Commonwealth recommended the court use a higher offense gravity score for the conspiracy conviction, to account for the fentanyl the police found in both Boston's and Bonez-Gomez's apartments.[2] The Commonwealth recommended the court impose standard-range sentences, but that it impose a consecutive sentence for the conspiracy count.

Boston argued that because he pleaded guilty, among other things, the court should not hold him responsible for the drugs found in Bonez-Gomez's

---

[2] Conspiracy to commit possession with intent to deliver between 10 and 50 grams of fentanyl carries an offense gravity score of 11, whereas conspiracy to commit possession with intent to deliver between 1 and 10 grams of fentanyl carries an offense gravity score of 10. *See* 204 Pa. Code § 303.15.

apartment when imposing sentence on the conspiracy charge. *Id.* at 36-37.

Boston also asked the court to impose concurrent sentences falling in the

mitigated or standard range.

Seven witnesses testified on Boston's behalf. They attested that Boston

was very involved with his community and has coached youth football and

softball. Boston has helped with community drives for book bags, raising funds

for little leagues, and in giving away food at Thanksgiving. Several people also

described him as an advocate for community members. According to their

testimony, Boston owns his own business as an independent contractor and

has helped over 30 homeowners restore their properties using their

homeowner's insurance benefits. Boston is a single father and very active in

the lives of his and others' children. Several people testified they believed

Boston only resorted to criminal activity after facing financial trouble. *See id.*

at 18-36. Boston also exercised his right to allocution, apologizing for his

actions, asking for leniency, and expressing his desire to continue mentoring

children and helping the community. *See id.* at 40-41.

Prior to imposing sentence, the court made the following statement:

In fashioning my sentence, I have taken into consideration the Commonwealth's arguments. I have taken into consideration defense arguments. Mr. Boston's statement. I have taken into consideration all of the people who came to support you this morning. I have taken into consideration the photographs that you have provided for the [c]ourt to review of your community involvement.

I have looked at the sentencing factors under Title 42, Subsection 9721(b), Protection of the Public. I have considered the nature of the offense. The nature of this offense is egregious. There is just

nothing else to describe the sale of fentanyl. The amount of fentanyl that was put out on the street. The amount of the fentanyl that was put out on the street by the conspiracy between you and Mr. Gomez was enormous. The fact that you pled to, and I'm taking only the facts that were placed onto the record that you admitted to was on January 19th, 20 packets; January 21st, 20 packets; January 25th, 40 packets; January 28th, 40 packets; February 4th, 40 packets; February 12th, 40 packets; February 23rd, 60 packets; March 1st, 40 packets. And those were only to one person, an undercover police officer.

In addition, the amount of fentanyl that was found during the search warrants. I disagree with defense counsel. A conspiracy – for the charge of conspiracy you're responsible for those actions of your co-conspirator whether you know the extent of their actions or not. So, therefore, I do believe that the OGS as stated by the Commonwealth is appropriate . . . as I believe that under the law, he is responsible for what was found in his house and that of his co-defendant's house. . . .

In any event, my recitation of those facts is that for January 19th through March 1st, that's 280 packets that were put out on the street just by the deliveries to the undercover officer. In addition, there, as indicated by the prosecutor, during the search warrant of the defendant's house, there were two empty boxes containing a total of 1200 packets along with the grinder and the other materials made for processing fentanyl. Within the co-defendant's house there were 500 packets that were found.

As indicated, I took into consideration the Commonwealth's arguments. I have – I have taken into consideration the defense arguments. I have considered the risk of recidivism, which I do find to be great, considering on May 29th of 2008 he did plead guilty and serve several years in prison for a possession with the intent to deliver. As indicated, a sentence on that date was one year to four years under Berks County Docket 975 of 2009.

I've considered the gravity of the offense as it relates to the impact on the life of the victim in this case, the victim would be that of the community. I have listened to all of the people that have come before you. I hear what you're saying. I question what your involvement was with the community. Was your involvement truly that you were trying to help? All these good people here were doing good things for the community with the book bag drives, with the youth football, with the softball. All of these. Were you

doing those good things or were you integrating and infiltrating the system so that you knew where you could pedal your poison? That is the question that I have in my head.

I have considered the effect of your family. I have, truly. It's -- to have to come here and have your children here, I feel for them. I feel for the fact that their father is not going to be a part of their life in the same way that he has been a part of their life. Not that you certainly can't still be a part of their life.

I have considered, obviously, the factors in favor of the probation under title 42 subsection 9721, to which I find none. I have considered the rehabilitation needs of the defendant. I did consider his statement, obviously, his prior criminal record, which was available to me by the PSI, as I have already mentioned, indicates a prior possession with intent to deliver. It also references an aggravated assault which was committed shortly thereafter the [possession with intent to deliver]. The other indications are minor offenses with a -- some other indications as a juvenile.

I have considered his age, which I believe at this point he is 31 years of age. I have, as I indicated, considered all of the witnesses that have testified. I have considered the Sentencing Guidelines. And I believe that there is a basis for total confinement of which is warranted.

I believe that the Commonwealth's recommendation is generous in the fact that, quite honestly, you could have -- the Commonwealth could have, as [defense counsel] referenced, the Commonwealth could have taken all of these deliveries, every single packet, combined it in one and they could have added that total. They could have, during the course of that conspiracy of what actually the estimate had been put out on the street between January and March.

*Id.* at 41-46.

On the first four counts, the court sentenced Boston to three terms of two-and-a-half to 10 years' incarceration and one term of five to 10 years' incarceration, all to be served concurrently. On the fifth count—conspiracy—the court imposed a sentence of six and a half to 15 years' incarceration, to

- 5 -

be served consecutively to the other sentences. The court used the higher offense gravity score for the conspiracy charge, and each sentence was within the standard range of the sentencing guidelines. The aggregate sentence was 11½ to 25 years' incarceration.

Boston filed a post-sentence motion in which he asked for concurrent sentences on all counts. Boston argued "that the sentencing guidelines impose a higher offense gravity score for fentanyl compared to every other controlled substance." Post-Sentence Motion to Modify and Reduce Sentence, 4/5/22, at ¶ 6. He also argued that the imposition of a consecutive sentence for the conspiracy charge "suggests he would have received a shorter sentence if had acted alone in his crimes while distributing and/or possessing a larger quantity of fentanyl." *Id.* at ¶ 7. The court denied the motion. Boston appealed.

Boston's Statement of Questions Involved poses his issue as follows:

Whether the Sentencing Court abused its discretion and imposed a sentence in violation of the Sentencing Code as the sentence was unreasonable, based upon facts other than those presented at plea and sentencing, lacking sufficient basis in reasons placed on the record, and based upon improper factors, to wit: (a) that [Boston]'s risk of recidivism was great based upon a conviction more than 12 years prior; (b) that [Boston]'s involvement in the community service efforts was done with the intent to "infiltrate the system so that you knew where you could pedal your poison;" and (c) that the Commonwealth could have estimated a larger quantity of controlled substances distributed during the course of the conspiracy?

Boston's Br. at 6.

In Boston's Pa.R.A.P. 2119(f) statement, he similarly claims the sentence "was issued without sufficient reasons being placed on the record

and is so disproportionate as to implicate the fundamental norms that underlie the sentencing process." *Id.* at 14. He also contends the court abused its discretion in concluding he had a high risk of recidivism, as his prior drug conviction was over 12 years old. *Id.* He further claims the court abused its discretion "by suggesting that all of [Boston's] years of community service efforts were nothing more than a ruse to benefit his 46 days of distributing controlled substances." *Id.* at 14-15. Boston also posits the court based the sentence upon "the supposition that the Commonwealth could have estimated a higher weight of controlled substances distributed during the course of the conspiracy." *Id.* at 14. In addition, he argues the court imposed a consecutive sentence "simply because [he] conspired to distribute controlled substances with one other individual." *Id.*

The discretionary aspects of a sentence are not appealable as of right. ***Commonwealth v. Green***, 204 A.3d 469, 488 (Pa.Super. 2019), *aff'd*, 265 A.3d 541 (Pa. 2021). We will only review a discretionary sentencing claim if the appellant (1) preserved the issue in the court below, (2) filed a timely notice of appeal, (3) included in his brief a Rule 2119(f) concise statement of the reasons for the appeal, and (4) has raised a substantial question whether the sentence is appropriate under the Sentencing Code. *Id.*

The issues included in Boston's Questions Presented and Rule 2119(f) statement are waived. In his post-sentence motion, Boston only argued (1) that the sentencing guidelines are disproportionately harsh regarding the delivery of fentanyl, as compared to other drugs, and (2) that "he would have

received a shorter sentence if had acted alone in his crimes." He did not argue that the court failed to state sufficient reasoning or that it based his sentence on improper factors related to his prior record, his community service, or the amount of drugs involved in the case. Nor did he raise these issues at the sentencing hearing.[3] He has therefore waived these issues. **See Commonwealth v. Griffin**, 65 A.3d 932, 935 (Pa.Super. 2013) (discretionary sentencing issues must be preserved at the time of sentencing or in a post-sentence motion).

The only claim that Boston both preserved below and includes in his Rule 2119(f) statement[4]—that the court should not have increased his sentence based on a conviction for conspiracy—is not included in Boston's Statement of Questions Presented. He has therefore waived this issue as well. **See** Pa.R.A.P. 2116(a).

Furthermore, this issue does not raise a substantial question. A challenge to consecutive sentences raises a substantial question only "in the most extreme circumstances, such as where the aggregate sentence is unduly

_____

[3] At the sentencing hearing, Boston contested the offense gravity score used for the conspiracy charge, on the basis that it should not be based on the drugs found in Bonez-Gomez's apartment. That is significantly different to the instant challenge that the court abused its discretion in observing that the Commonwealth could have also included the weight of the drugs involved in the controlled buys. This issue is also waived by Boston's failure to include any discussion of it in the argument section of his brief.

[4] Boston has abandoned his claim that the sentencing guidelines treat those convicted of dealing fentanyl unfairly.

harsh, considering the nature of the crimes and the length of imprisonment." **Commonwealth v. Moury**, 992 A.2d 162, 171-72 (Pa.Super. 2010).

In his Rule 2119(f) statement, Boston argues that the court improperly imposed "a consecutive 78[-]month minimum sentence" for conspiracy "simply because [he] conspired to distribute controlled substances with one other individual." Boston's Br. at 14. This does not raise a substantial question. Boston pleaded guilty to conspiracy, which is a separate offense based on an agreement between two or more people to commit a crime. **See** 18 Pa.C.S.A. § 903(a). The court had discretion in sentencing for this crime, and Boston has not claimed that this represents an extreme case, such as that the aggregate sentence was unduly harsh given the facts of the crime.

He does contend in the argument section of his brief that the court abused its discretion in imposing a consecutive sentence for conspiracy, thereby greatly increasing the aggregate sentence, because his crime was not particularly egregious. Boston's Br. at 21. However, we may not consider arguments outside the Rule 2119(f) statement in determining whether Boston presents a substantial question. **See Commonwealth v. Radecki**, 180 A.3d 441, 468 (Pa.Super. 2018) ("[W]e cannot look beyond the statement of questions presented and the prefatory [Rule] 2119(f) statement to determine whether a substantial question exists") (citation omitted).

Even if Boston had raised a substantial question, his claim would fail. We will not grant relief on a discretionary sentencing claim absent a manifest abuse of discretion. **Commonwealth v. Shull**, 148 A.3d 820, 831-32

(Pa.Super. 2016) (citing **Commonwealth v. Antidormi**, 84 A.3d 736, 760 (Pa.Super. 2014)).

The court below concluded that Boston had not had a trivial, passing involvement with drug dealing, but rather was responsible for putting an "enormous" amount of fentanyl on the street. **See** N.T. at 42. The court counted 280 packets of fentanyl distributed to an undercover officer and another 1,700 found at Boston's and the co-defendant's homes. **See id** at 43.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/30/2023